**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| Brainista, Inc. | Case No. 5:25-cv-02511 |
| Plaintiff | **COMPLAINT FOR COUNTERFEITING, TRADEMARK INFRINGEMENT, COPYRIGHT INFRINGEMENT, AND UNFAIR COMPETITION** |
| v. | |
| NA LLC, and John Doe(s) | **JURY TRIAL DEMANDED** |
| Defendants | |

## ORIGINAL COMPLAINT

Plaintiff Brainista, Inc. ("Brainista" or "Plaintiff") brings this Complaint against NA LLC and its principal(s) (collectively, "Defendants"), alleging counterfeiting, trademark infringement, copyright infringement, and related violations. Plaintiff makes the following allegations upon personal knowledge as to itself and its own actions, and upon information and belief as to all other matters, including the involvement and identities of the Defendants:

## NATURE OF THE ACTION

1.      This is a civil action for willful: trademark infringement, counterfeiting, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a); copyright infringement and impermissible alteration of copyright management information ("CMI") under the Copyright Act, 15 U.S.C. §§ 501 and 1203; and related state law claims for unfair competition and deceptive trade practices.

## THE PARTIES

2.      Plaintiff is a corporation existing under the laws of the State of Delaware having an address of record at 838 Walker Rd., Suite 21-2, Dover DE 19904.

3.      Upon information and belief, NA LLC is a Delaware limited liability company that with an addresses of record at: (i) 21810 N. Church St., Wilmington, DE 19802; and (ii) 131 Continental Dr. Suite 305, Newark DE 19713.

4.      Upon information and belief, an e-commerce website operating under the name "Nature Zempic" is hosted on the Shopify platform at https://naturezempic.com.  Plaintiff believes that this website was operated, managed, or otherwise controlled by Defendants.

5.      Upon information and belief, an e-commerce website operating under the name "Natures" is hosed on the Shopify platform at https://natures.com. Plaintiff believes that this website is operated, managed or otherwise controlled by Defendants.

6.      Upon information and belief, John Doe(s) is an owner, operator, and/or decision-maker for NA LLC.

7.      Plaintiff will conduct third-party discovery pursuant to Federal Rule of Civil Procedure 45 to confirm the identity of John Doe(s).

8.      Upon information and belief, Defendants have sold counterfeit products, have advertised and offered for sale (and continue to advertise and offer for sale) infringing products, and have published/used (and continue to publish/use) product listings and marketing materials that missuse and infringe Plaintiff's trademarks and copyrighted works (*e.g.*, via Defendants' naturezempic and natures websites, online e-commerce platforms, and associated marketing channels).

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

10.     To the extent any additional claims may arise in the future, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for additional claims that arise or may arise and are so related to the claims of this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants have committed acts of copyright infringement, trademark infringement,

and DMCA violations within the State of Ohio and this District, including offering for sale, promoting, and selling infringing products to consumers located in this District.

12.     Further, this Court has personal jurisdiction over Defendants under Fed.R.Civ.P. 4 and Ohio's long-arm statute, R.C. § 2307.382(A)(4) and/or R.C. § 2307.382(A)(6). Specifically, Defendants have intentionally and knowingly caused tortious injury in the State of Ohio to Plaintiff by an actor or omission outside this State: (1) which was committed with the purpose of injuring Plaintiff, when Defendants might reasonably have expected that Plaintiff would be injured thereby in this State; and/or (2) upon information and belief, Defendants regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in this State.

13.     Defendants' contacts with the State of Ohio arise from and are proximately caused by Defendants' actions and omissions described herein, as required by R.C. § 2307.382(C), and those actions have caused tortious injury to Plaintiff. Thus, Defendant has sufficient minimum contacts with Ohio such that the assertion of personal jurisdiction over Defendant comports with the traditional notions of fair play and substantial justice.

14.     Upon information and belief, Defendants regularly transact business in the State of Ohio and within this District, including through the operation of an interactive e-commerce website accessible by Ohio consumers.

15.     Upon information and belief, Defendants engages in other persistent conduct directed toward the Northern District of Ohio and derives revenue from sales of products and/or services provided in this District.

16.     Venue in the Northern District of Ohio is proper pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

17.     Upon information and belief, Defendants have committed acts of copyright infringement, trademark infringement, and violations of 17 U.S.C. § 1202 within this judicial district, including the unauthorized use of Plaintiff's copyrighted works and trademarks and the removal or alteration of CMI.

18.     Upon information and belief, Defendants continue to conduct business in this District, including offering infringing products for sale that unlawfully incorporate and display Plaintiff's copyrighted works and trademarks, and that include altered digital images in violation of the DMCA.

## BRAINISTA

19.     Plaintiff is a health and wellness company specializing in functional beverages designed to enhance energy, cognitive function, and digestive health.

20.     Plaintiff's flagship product, Yerba Magic - Yerba Mate Instant Tea Powder ("Yerba Magic"), offers a clean energy boost with gut support.  This instant tea combines Argentine yerba mate with ingredients like lion's mane mushroom and L-theanine to promote mental alertness, antioxidant support, and improved digestion.  Yerba Magic is offered in a variety of flavors, including Peach Mango, Strawberry Matcha, and Pina Colada.

21.     Plaintiff has owned and operated its websites https://brainista.com/ and https://yerbamagic.com/ ("Brainista Websites") since about June of 2024.

22.     Plaintiff    created,    and    has    managed,    an    Amazon.com    storefront (https://www.amazon.com/stores/Brainista/page/EA002929-E0CF-4346-B9D6-0F84DA7AE15B?lp) under the Brainista brand ("Brainista Amazon") since about June of 2024.

23.     Plaintiff    has    owned    and    operated    an    Instagram    account (https://www.instagram.com/brainista.inc/) ("Brainista Instagram") since about June of 2024.

24.     Plaintiff has owned and operated a Tik Tok Shop account ("Brainista Tik Tok") since about June of 2024.

## BRAINISTA'S INTELLECTUAL PROPERTY

25.     Plaintiff is the owner of Registered U.S. Trademark Nos. 7711918 and 7711919 to "YERBA MAGIC" in: class 5 for dietary and nutritional supplements, powdered nutritional supplement dink mix; and class 30 for mixes in the nature of concentrates, syrups or powders used in the preparation of tea-based beverages, and tea-based beverages (collectively, the "YERBA MAGIC Marks"). (Exhibit 1.)

26.     Plaintiff is the owner of Registered U.S. Trademark Nos. 7696769 and 7696771 to "BRAINISTA" in: class 5 for dietary and nutritional supplements, powdered nutritional supplement drink mix; and class 30 for, *intra alia*, mixes in the nature of concentrates, syrups or powders used in the preparation of tea-based beverages (collectively, the "BRAINISTA Marks"). (Exhibit 2.)

27.     As used herein, the YERBA MAGIC Marks and the BRAINISTA Marks are collectively referred to as "Plaintiff's Marks".

28.     Plaintiff is also the owner of common law trade dress rights in its Yerba Magic product packaging, including the placement and use of original artwork, color, and scheme and a

6

unique and distinctive icon bar, positioned at the bottom of the packaging, composed of multiple icons that convey product attributes (red arrows below identify exemplary trade dress features).



29.    The aforementioned trade dress covering Plaintiff's distinctive product packaging is referred to hereinafter as the "Trade Dress."

30.    Plaintiff's Marks and Trade Dress have been used by Plaintiff in U.S. Commerce in connection with functional beverage products, including yerba mate tea blends, since at least May of 2024. Plaintiff has continuously promoted and sold such products under Plaintiff's Marks via, for example, Brainista Websites, Brainista Amazon, Brainista Instagram, and Brainista Tik Tok.

31.    Plaintiff's Marks and Trade Dress are associated with Plaintiff's functional beverage products and serve to identify Plaintiff as the source of such products. Plaintiff's Marks have been consistently used in U.S. commerce in connection with product labeling, packaging, online marketing, and e-commerce sales.

32.     Additionally, Plaintiff is the creator, author, and intellectual property owner of, *inter alia*, original works of authorship; specifically, original visual artworks and product packaging label designs that incorporate those artworks (collectively, the "Plaintiff's Works").

33.     Plaintiff's Works include the following original works of authorship, each of which is reproduced below:

34.     Copyrighted work titled "Yerba Magic Original", which is registered with the United States Copyright Office under Reg. No. VA0002430977. (Exhibit 3.) Yerba Magic Original was completed in the year 2024 and was first published in June of 2024. (*Id.*)  The artwork, which appears as a visual element on Plaintiff's Yerba Magic product packaging, with the "BRAINISTA" designation identifying Plaintiff as the copyright owner.  (Exhibit 4.)



35.     Copyrighted work titled "Yerba Magic 2 Bag", which is registered with the United States Copyright Office under Reg. No. VA2445985. Yerba Magic 2 Bag was completed in the year 2024 and first published in November of 2024. (Exhibit 5.)

36.     Copyrighted work titled "Yerba Magic Original Bag with Peach Mango", which is registered with the United States Copyright Office under Reg. No. VA2465903. Yerba Magic Original Bag with Peach Mango was completed in the year 2024 and first published in June of 2024. (Exhibit 6.)

37.     Plaintiff is also the creator, author, and intellectual property owner of numerous digital images, product photographs, and promotional materials that feature, display, or depict Plaintiff's Works.

38.     Plaintiff has also created numerous product photographs, e-commerce display images, and/or social media promotional materials that incorporate one or more of Plaintiff's Works.

39.     Defendants undoubtedly had access to Plaintiff's Works, each of which has been publicly available on one or more Plaintiff's commercial platforms (including the Brainista Websites, the Brainista Amazon Storefront, the Brainista Instagram account, and/or the Brainista TikTok account). For example, Plaintiff's Works are featured in product images, advertisements, and packaging materials published by Plaintiff across the above-referenced platforms.

40.     Further, Plaintiff has incorporated Yerba Magic Original, and color variations thereof, on the labelling and packaging of its products since on or about May of 2024.

41.     Plaintiff does not offer licenses to Plaintiff's Works.

9

## DEFENDANTS

42.     Upon information and belief, Defendants conduct business at least through an online store located at Defendants' Websites since at least February of 2025. (Busch Dec. ¶ 8; Exhibit 7.)

43.     Upon information and belief, Defendants conduct business at least through multiple Amazon listings (collectively, "Defendants' Amazon Listings"). (Busch Dec. ¶¶ 10-11; Exhibits 8-9.)

44.     Upon information and belief, Defendants have sold, offered for sale, marketed, and displayed for commercial promotion yerba mate tea powder products bearing Plaintiff's Marks ("Counterfeit Products"), shown below. (Busch Dec. ¶ 12; Exhibits 10-11.)

45.     In addition to bearing Plaintiff's Marks, the product packaging of Defendant's Counterfeit Products is nearly identical to Plaintiff's authentic products in other aspects. For example, the Defendants' Counterfeit Products: (i) include reproductions of Plaintiff's Works; (ii) are offered in the same flavor SKUs as Plaintiff's products; (iii) present the same supplement facts as Plaintiff's products; and (iv) have product packaging that includes the same icon bars and function claims as Plaintiff's products. (Busch Dec. ¶ 13; Exhibit 13.)

46.     Upon information and belief, Defendants have sold, offered for sale, marketed, and displayed for commercial promotion yerba mate tea powder products under the brand name "Zempic" bearing Plaintiff's Works on at least the product packaging an associated marketing materials ("1st Zempic Product/Offerings"). (Exhibit 14.)

47.     Upon information and belief, Defendants have sold, offered for sale, marketed, and displayed for commercial promotion yerba mate tea powder products under the brand name

"Zempic" bearing derivative works of Plaintiff's Works on at least the product packaging and associated marketing materials ("2nd Zempic Product/Offering"). (Exhibit 15.)

48.     Upon information and belief, Defendants have sold, offered for sale, marketed, and displayed for commercial promotion yerba mate tea powder products under the brand name "Natures" bearing derivative works of Plaintiff's Works on at least the product packaging and associated marketing materials ("1st Natures Product/Offering"). (Exhibit 16.)

49.     Upon information and belief, Defendants have sold, offered for sale, marketed, and displayed for commercial promotion yerba mate gummy products under the brand name "Natures" bearing derivative works of Plaintiff's Works on at least the product packaging and associated marketing materials ("2nd Natures Product/Offering"). (Exhibit 17.)

50.     As used herein, the term "Defendants' Infringing Products/Offerings" is used to collectively refer to the 1st Zempic Product/Offerings, the 2nd Zempic Product/Offerings, the 1st Natures Product/Offerings, and the 2nd Natures Product/Offerings.

51.     The aforementioned Counterfeit Product and Defendants' Infringing Products/Offerings are referred to hereinafter collectively as the "Accused Products/Offerings."

52.     The product packaging of Defendants' Infringing Products are nearly identical to Plaintiff's authentic yerba mate products. For example, the Defendants' Infringing Products: (i) have product packaging that includes reproductions or derivatives of Plaintiff's Works; (ii) are offered in the same flavor SKUs as Plaintiff's products; and (iii) have product packaging that includes the same icon bars, suggested use, and function claims as Plaintiff's products. (Exhibits 14-17.)

53.     Upon information and belief, Defendants have published, and continue to publish, advertisements on Google and Meta ("Defendants' Advertisements") depicting yerba mate products that bear at least Plaintiff's YERBA MAGIC Mark. (Exhibits 18-19.)

54.     Upon information and belief, Defendants have published, and continue to publish, Defendants' Advertisements depicting yerba mate products bearing reproductions and/or derivative works of one or more of the Plaintiff's Works. (*Id.*)

55.     Upon information and belief, Defendants have published, and continue to publish, Defendants' Advertisements claiming to be the rightful owners of Plaintiff's Marks and Plaintiff's Works. (Exhibit 20.)

56.     Upon information and belief, Defendants have published, and continue to publish, Defendants' Advertisements claiming that Plaintiff's authentic products are "shady knockoffs". (*Id.*)

57.     Upon information and belief, Defendants have published, and continue to publish, an email newsletter that regularly includes reproductions and/or derivatives of Plaintiff's Works. (Exhibit 21.)

## DEFENDANTS' MISAPPROPRIATION OF PLAINTIFF'S MARKS AND TRADE DRESS

58.     The front of the Counterfeit Products display, without authorization, Plaintiff's YERBA MAGIC Marks. In the location where Plaintiff's original packaging features the BRAINISTA Marks, the infringing packaging omits the mark entirely, leaving a blank space, as indicated by a red box below.



(Exhibit 12.)

59. The back of the Counterfeit Products contains additional unauthorized use of Plaintiff's YERBA MAGIC Marks. Further, the back of the Counterfeit Products include the text "Brainistainc", a misspelled copying of Plaintiff's BRAINISTA Marks. These references to Plaintiff's Marks are identified with red boxes in the reproduced image below. The statements and branding elements create a false association with Plaintiff and misappropriate Plaintiff's goodwill and brand identity.



(*Id*.)

60.     The Accused Products/Offerings also identically, or nearly identically, reproduce Plaintiff's Trade Dress in association with the same type of goods as Plaintiff's authentic products. (Exhibit 22.)

61.     Defendants' unauthorized use of the Plaintiff's Marks and Trade Dress are likely to cause consumer confusion as to the origin or affiliation of the goods.

62.     Defendants are not, and have never been, authorized licenses of Plaintiff, have not received permission or consent to use any of Plaintiff's Marks or trade dress or have ever requested such permission or consent.

63.     Defendants' acts constitute trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a).

### DEFENDANT'S MISAPPROPRIATION OF PLAINTIFF'S WORKS

64.     At least Defendants' Counterfeit Products and 1st Zempic Product/Offerings incorporate unauthorized reproductions of Plaintiff's Works into the product packaging and/or labels. For example, Defendants' Counterfeit Products and 1st Zempic Product/Offerings incorporate duplications of, or slight color variations of, Plaintiff's Yerba Magic Original artwork onto the product packaging across multiple flavor SKUs, as exemplified below.

Example Counterfeit Product        Example 1st Zempic Product/Offering

      

(Exhibit 12, 14.)

65.     Likewise, Defendants' advertising material associated with Defendants' 1st Zempic Product/Offertings are substantially identical (*e.g.*, having the same visual layout, imagery, and overall design) to Plaintiff's Works. (Exhibit 23.)

66.     At least Defendants' 2nd Zempic Products/Offerings, 1st Natures Products/Offerings, and 2nd Natures Products/Offerings incorporate unauthorized derivative works of Plaintiff's Works into the product packaging and/or labels.

67.     Upon information and belief, the image incorporated onto Defendants' 2nd Zempic Products/Offerings, 1st Natures Products/Offerings, and 2nd Natures Products/Offerings is based upon preexisting Plaintiff's Works, specifically Yerba Magic Original.

68.     Likewise, Defendants' advertising material associated with Defendants' 2nd Zempic Products/Offerings, 1st Natures Products/Offerings, and 2nd Natures Products/Offerings are derivative works to Plaintiff's Works.

69.     Defendants' artwork incorporated onto the packaging of, and in marketing and listing materials associated with, Defendants' 2nd Zempic Products/Offerings, 1st Natures Products/Offerings, and 2nd Natures Products/Offerings are referred to herein as the "Derivative Works".

Example Derivative Works          Yerba Magic Original

(Exhibit 15, 16, 3.)

70.     Both the Derivative Work and Plaintiff's Works consist of at least: (i) a sun surrounded by clouds over a waterfall; (ii) a waterfall with at least two sets of falling water; (iii) a

stream leading from the waterfall to the foreground; (iv) a woman with long, dark, tied-back hair overlooking the stream and waterfall; (v) the woman positioned with her back to the viewer; (vi) the woman dressed in a flowing gown; (vii) the woman holding a cup; (viii) glowing vapor rising from the cup; and (ix) the woman offset to the left in relation to the waterfall.

71.     Defendants are not, and have never been, an authorized licensee of Plaintiff, and has not received any license, assignment, or permission to use Plaintiff's Works.

72.     Defendants used Plaintiff's Works, and derivatives thereof, for commercial advertising and product packaging without Plaintiff's knowledge, authorization, or consent.

73.     Defendants have not paid Plaintiff any licensing fees or royalties, nor have Defendants sought permission or clearance for any use of Plaintiff's Works.

74.     Upon information and belief, Defendants' acts of infringement were deliberate, willful, and committed with actual knowledge of, or reckless disregard for, Plaintiff's exclusive rights in Plaintiff's Works.

## <u>COUNT I</u>
### (15 U.S.C. § 1114(1) – Trademark Counterfeiting)

75.     Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

76.     Defendants' unauthorized use and copying of Plaintiff's Marks on the same products for which Plaintiff's Marks are registered constitutes trademark counterfeiting under 15 U.S.C. § 1114(1) as defined in U.S.C. § § 1116(d) and 1127.

77.     Defendants' unauthorized use and copying of Plaintiff's Marks constitutes use in commerce of counterfeits of the Plaintiff's Marks, in connection with the sale, offering for sale, distribution, and/or advertising of Defendants' Counterfeit Products.

78.     Defendants' unauthorized use and copying of Plaintiff's Marks also constitute use in commerce of counterfeits of Plaintiff's Marks, in connection with the advertising of Defendants' Infringing Products.

79.     Defendants' unauthorized use and copying of Plaintiff's Marks is likely to cause confusion, and to cause mistake, and to deceive purchasers, potential purchasers, the trade, and the public.

80.     Plaintiff has been and continues to be damaged by Defendants' foregoing unauthorized use and copying of Plaintiff's Marks.

81.     Upon information and belief, Defendants' have profited by such unauthorized use and copying, and unless it is enjoined, Defendants' business, goodwill, and reputation will suffer irreparable injury.

82.     Upon information and belief, Defendants' foregoing unauthorized use and copying of Plaintiff's Marks are willful, wanton, intentional, and undertaken in bad faith, making this an exceptional case pursuant to U.S.C. § 1117, and entitling Plaintiff to recover statutory damages or actual damages in an amount to be proven at trial, treble damages, additional damages, and attorneys' fees under U.S.C. § 1117.

## COUNT II

**(Lanham Act, 15 U.S.C. § 1125(a) – Federal Unfair Competition:**

**Trademark Infringement, Trade Dress Infringement, Passing Off, False Advertising)**

83.     Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

84.     Plaintiff has the exclusive right to use Plaintiff's Marks and Trade Dress in commerce for the goods identified therein.

85.     Defendants' acts complained of herein constitute trademark infringement, trade dress infringement, passing off, and false advertising in violation of 15 U.S.C. § 1125(a). Defendants' use of Plaintiff's Marks in connection with yerba mate products and commercial promotion thereof constitutes trademark infringement and false advertising. Defendants' use of Plaintiff's Trade Dress on and in connection with the Accused Products/Offerings constitutes trade dress infringement and passing off.

86.     Defendants' use of Plaintiff's Marks and Trade Dress, along with reproductions, counterfeits, copies or colorable imitations thereof, is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Plaintiff and as to the origin, sponsorship, and/or approval of the Accused Products/Offerings, at least by creating the false and misleading impression that the Accused Products/Offerings are manufactured by, authorized by, or otherwise associated with Plaintiff.

87.     Plaintiff's Marks are valid and registered with the United States Patent and Trademark Office.

88.     Plaintiff's Trade Dress is entitled to protection under the Lanham Act. Plaintiff's Trade Dress includes unique, inherently distinctive, and non-functional designs. Plaintiff has extensively and continuously promoted and used its Trade Dress in commerce in the United States. Through that extensive and continuous use, Plaintiff's Trade Dress has become a well-known

indicator of the origin of Plaintiff's yerba mate products. Plaintiff's Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Plaintiff's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Plaintiff's Trade Dress in connection with the Accused Products/Offerings.

89.    Defendants' use of Plaintiff's Marks and Trade Dress was without Plaintiff's license, authorization, or consent, and constitutes trademark infringement and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

90.    Defendants' unauthorized use and copying of Plaintiff's Marks and Trade Dress is likely to cause confusion mistake and deception among purchasers, potential purchasers, the trade, and the public; and/or to deceive them into believing that Defendants' goods originate from, are associated with, and/or are approved or sponsored by Plaintiff when in fact no such association, approval, or sponsorship exists.

91.    Defendants' Advertisements, promotions, and newsletters described herein constitute (1) commercial speech; (2) for the purpose of influencing customers to buy the Accused Products/Offerings; (3) that is disseminated to a substantial portion of both Plaintiff's and Defendants' existing customer base.

92.    Indeed, in some instances, a search for "Yerba Magic" on Google, Meta, and/or Amazon results in customers being directed to the Accused Products/Offerings.

93.    Based upon some or all of the foregoing, Defendants have made false or misleading statements of fact in commercial advertising or promotion that misrepresent the nature, characteristics, or qualities of Defendants' goods. Instance of such false or misleading statements

of fact include, but are not limited to: (1) the use of Plaintiff's products (and thereby Plaintiff's Marks and/or Trade Dress) in its Advertisements; (2) the use of images of Plaintiff's products (and thereby Plaintiff's Marks and/or Trade Dress) in its product listings, order receipts, and/or newsletters; and (3) publishing a narrative that Defendants are the original creator to Plaintiff's yerba mate products.

94. These false or misleading statements of fact regarding Defendants' goods had the capacity to deceive or confuse a substantial segment of Plaintiff's or Defendants' customers and were material in that such conduct was likely to influence the decision to purchase.

95. Plaintiff has been and continues to be damaged by Defendants' foregoing unauthorized use and copying of Plaintiff's Marks and Trade Dress, as well as by Defendants' false or misleading statements. Upon information and belief, Defendants' have profited by these activities, and unless Defendants are enjoined, Plaintiff's business, goodwill and reputation will suffer irreparable injury.

96. Defendants' foregoing unauthorized use and copying of Plaintiff's Marks and Trade Dress, and false or misleading statements, are willful, wanton, intentional, and undertaken in bad faith, making this an exceptional case pursuant to 15 U.S.C. § 1117, and entitling Plaintiff to recover statutory damages or actual damages in an amount to be proven at trial, treble damages, additional damages, and attorneys' fees under 15 U.S.C. § 1117.

## COUNT III

**(Copyright Act, 17 U.S.C. § 501 - Direct and Willful Copyright Infringement)**

21

97.     Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

98.     As the owner of Plaintiff's Works, Plaintiff holds exclusive rights under 17 U.S.C. § 106, including the rights to reproduce, distribute, publicly display, and create derivative works.

99.     Defendants had access to Plaintiff's Works through Plaintiff's website, social media platforms, and e-commerce storefronts, where the work was publicly displayed in connection with Plaintiff's product packaging and promotional materials.

100.    Without license, authorization, or consent, Defendants copied, reproduced, and publicly displayed Plaintiff's Works in commercial promotion, including digital listings on Defendants' Websites and Defendants' Advertisements.

101.    Without license, authorization, or consent, Defendants copied, reproduced, and publicly displayed Plaintiff's Yerba Magic Original artwork as part of the Counterfeit Products packaging.

102.    Without license, authorization, or consent, Defendants prepared, publicly displayed, and distributed Derivative Works of Plaintiff's Works in commercial promotion, including digital listings on Defendants' Websites and Defendants' Advertisements.

103.    Without license, authorization, or consent, Defendants prepared, publicly displayed, and distributed Derivative Works of Plaintiff's Works as part of the Infringing Products packaging.

104.    Defendants conduct constitutes copyright infringements in violation of 17 U.S.C. § 501.

105.     Upon information and belief, Defendants' infringement was willful, deliberate, and undertaken with actual knowledge or reckless disregard of Plaintiff's exclusive rights.

106.     Plaintiff has suffered and will continue to suffer substantial harm, including lost revenues, dilution of goodwill, and harm to its business reputation.

107.     Plaintiff is entitled to recover damages, including Plaintiff's actual damages and any additional profits the Defendants have made as a result of its wrongful conduct pursuant to 17 U.S.C. § 504.

108.     Plaintiff is likely to be entitled to statutory damages under 17 U.S.C. § 504.

109.     In addition, because Defendant's infringement was willful, the award of damages should be enhanced in accordance with 17 U.S.C. § 504.

## COUNT IV

**(DMCA, 17 U.S.C. § 1202 - Removal or Alteration of Copyright Management Information)**

110.     Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

111.     Plaintiff is the author and copyright owner of a visual artwork titled Yerba Magic Original, which is incorporated into the visual packaging design used on Plaintiff's Yerba Magic product.  The packaging design includes designation of the author (i.e., BRAINSITA) at the top of the bag. (Exhibit 3.)

112.     Plaintiff is also the author and copyright owner of a visual artwork titled Yerba Magic 2 Bag. This image likewise includes the author designation "BRAINISTA". (Exhibit 4.)

113.   Plaintiff is also the author and copyright owner of a visual artwork titled Yerba Magic Original Bag with Peach Mango. This image likewise includes the author designation "BRAINISTA". (Exhibit 5.)

114.   In each instance, the "BRAINISTA" designation constitutes CMI under 17 U.S.C. § 1202(c), as it identifies Plaintiff as the copyright owner of the work.

115.   Plaintiff publicly displayed Plaintiff's Works on at least its websites. (*See e.g.,* Exhibit 14.)

116.   Upon information and belief, Defendants intentionally removed or altered the CMI by deleting the BRAINISTA designation from each example publication of Plaintiff's Works. In some instances, Defendants' altered the CMI, replacing BRAINISTA with the term "zempic." These alterations resulted in unauthorized and misleading versions of Plaintiff's Works, used to promote infringing products. (*Id.*)

117.   Upon information and belief, Defendants removed or altered the CMI to advertise and promote the yerba mate products on Defendant's Websites and associated online platforms. In doing so, Defendants falsely represented the image and associated product as originating from Defendant.

118.   Upon information and belief, Defendants knowingly removed or altered CMI with the intent to conceal the true origin of the images, mislead consumers as to authorship and affiliation, and falsely suggest that the products and images originated from or were authorized by Defendants.

119.   Upon information and belief, Defendants reproduced substantial portions of Plaintiff's Works, including original graphic elements, and knowingly distributed the altered

24

images in commerce through its website and online advertisements, without Plaintiff's license or authorization.

120.     Defendants' actions constitute violations of 17 U.S.C. § 1202(b), including §§ 1202(b)(1) and 1202(b)(3).

121.     As a result of Defendants conduct, Plaintiff has suffered damages and is entitled to statutory damages, attorney's fees, and costs pursuant to 17 U.S.C. § 1203, as well as such other relief as the Court deems just and proper.

## COUNT V

### (O.R.C. § 4165.02 - Deceptive Trade Practices Act)

122.     Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

123.     Defendants, in the course of business, engaged in acts (including the unauthorized use and copying of Plaintiff's Marks, Trade Dress, and Works, along with the explicit misrepresentations as to the origin thereof) that caused a likelihood of confusion or misunderstanding as to the source of, or sponsorship or approval with respect to Plaintiff's products.

124.     Defendants, in the course of business, engaged in acts (including the unauthorized use and copying of Plaintiff's Marks, Trade Dress, and Works, along with the explicit misrepresentations as to the origin thereof) that caused a likelihood of confusion or misunderstanding as to Defendants' affiliation, connection, and/or association with Plaintiff.

125.     Upon information and belief, Defendants, in the course of business, engaged in acts (including the unauthorized use and copying of Plaintiff's Marks, Trade Dress, and Works, along

with the explicit misrepresentations as to the origin thereof) that represented that its goods had or have sponsorship, approval, characteristics, ingredients, uses, benefits, and/or quantities that they did not nor do not have, including without limitation, a sponsorship and/or approval by, or an affiliation or connection with, Plaintiff that Defendants did not and do not have.

126.    Under Ohio Common law, claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act are subject to the same likelihood of confusion standards under the Lanham Act. Accordingly, for the same reasons stated above, Plaintiff has been and continues to be damaged by Defendants foregoing unauthorized use and copying of Plaintiff's Marks and Works. Upon information and belief, Defendants have profited by these activities, and unless Defendants are enjoined, Plaintiff's business, goodwill and reputation will suffer irreparable injury.

127.    For the same reasons stated above, Defendants' unauthorized use and copying of Plaintiff's Marks and Trade Dress are willful, wanton, intentional, and undertaken in bad faith, and Plaintiff is entitled to recover actual damages, treble damages, additional damages, and attorneys' fees.

## COUNT VI

### (Ohio Common Law Unfair Competition)

128.    Plaintiff incorporates the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

129.    Defendants' unauthorized use and copying of Plaintiff's Marks and Trade Dress on and with the offering for sale and sale of its products creates a likelihood of confusion and/or

mistake as to the source, origin, sponsorship, and/or approval of Defendants' goods, thereby constituting unfair competition under the common law of the State of Ohio.

130.    Specifically, Defendants' unauthorized use and copying of Plaintiff's Marks and Trade Dress represents, for the purpose of deceiving the public, that its goods are those of Plaintiff, and/or its goods are sponsored and/or approved by Plaintiff, when they are not.

131.    Under Ohio Common law, the analysis of an unfair competition claim is the same as that for a claim under the Lanham Act. Accordingly, for the same reasons stated above, Plaintiff has been and continues to be damaged by Defendants foregoing unauthorized use and copying of Plaintiff's Marks and Trade Dress. Upon information and belief, Defendants have profited by these activities, and unless Defendants are enjoined, Plaintiff's business, goodwill and reputation will suffer irreparable injury.

132.    For the same reasons stated above, Defendants' unauthorized use and copying of Plaintiff's Marks and Trade Dress are willful, wanton, intentional, and undertaken in bad faith, and Plaintiff is entitled to recover actual damages, treble damages, additional damages, and attorneys' fees.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests:

A.    A judgment that Defendants have infringed Plaintiff's registered trademarks in violation of 15 U.S.C. § 1114 and committed acts of false designation of origin in violation of 15 U.S.C. § 1125(a);

B.    A judgment that Defendants have infringed Plaintiff's registered copyrights under 17 U.S.C. § 501;

C.      A judgment that Defendants have violated the Digital Millennium Copyright Act, including 17 U.S.C. § 1202;

D.      A judgement that the corporate Defendant is nothing more than the alter ego of John Doe(s), that the corporate form should be ignored, and that the corporate veil is rightfully pierced, making John Doe(s) personally liable for any judgement against the corporate Defendant.

E.      A permanent injunction enjoining Defendants, their affiliates, subsidiaries, diversions, officers, agents, employees, representatives, privies, successors, assigns and all those acting for them or on their behalf, or acting in concert with them directly or indirectly from: (i) advertising, marketing, promoting, manufacturing, exporting, distributing, offering for sale or selling products bearing Plaintiff's Marks and/or Trade Dress; (ii) copying, displaying, distributing, advertising, promoting, or selling works that incorporate Plaintiff's Trade Dress and/or Works; (iii) using Plaintiff's registered trademarks and/or trade dress or any confusingly similar variations thereof; and (iv) altering or removing copyright management information from Plaintiff's copyrighted content; and/or (v) doing any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products are in any way associated or affiliated with or sponsored by or endorsed by Plaintiff;

F.      An order directing the impoundment and/or destruction of all infringing products, packaging, labels, marketing materials, digital images, and other items in Defendants' possession or control that incorporate or bear Plaintiff's Marks, Trade Dress, Works, and/or derivatives thereof;

G.      An order directing e-commerce platforms, such as Amazon and Tik Tok Shop, to permanently remove any product listings featuring products that incorporate, as a part of the product packaging, Plaintiff's Marks, Trade Dress, Works, and/or derivatives thereof and to refrain from listing on behalf of Defendants or any other person Defendants' products that are confusingly similar to Plaintiff's products;

H.      An order directing Google and Meta to permanently remove any advertisements featuring products that incorporate, as a part of the product packaging, Plaintiff's Marks, Trade Dress, Works, and/or derivatives thereof and to refrain from listing on behalf of Defendants or any other person Defendants' advertisements for said products;

I.      An equitable accounting of Defendants' profits, if any, from the sale of its infringing goods, and award Plaintiff judgement for its damages or Defendants' profits, whichever are greater, including pre- and post-judgment interest thereof;

J.      An award of Plaintiff's actual damages and/or statutory damages under 15 U.S.C. § 1117, whichever is greater, arising from Defendants' violation of 15 U.S.C. § 1114, including pre- and post-judgement interest thereon;

K.      An award of Plaintiff's actual damages and/or statutory damages under 15 U.S.C. § 1117, whichever is greater, arising from Defendants' violation of 15 U.S.C. § 1125, including pre- and post-judgement interest thereon;

L.      An award of Plaintiff's actual damages and/or statutory damages under 17 U.S.C. § 501, whichever is greater, arising from Defendants' violation of 15 U.S.C. § 504, including pre- and post-judgement interest thereon;

M.     An award of Plaintiff's actual damages and/or statutory damages under 15 U.S.C. § 1203, whichever is greater, arising from Defendants' violation of 15 U.S.C. § 1202, including pre- and post-judgement interest thereon;

N.     A declaration that, due to the intentional, willful, and wanton nature of Defendants' activities, the above-referenced matter is an exceptional case, and award Plaintiff treble damages, additional damages, attorneys' fees, and/or costs thereunder;

O.     An award of Plaintiff's actual damages, treble damages, additional damages, and/or attorneys' fees for Defendants' violations of O.R.C. § 4165.02;

P.     An award of Plaintiff's actual damages, treble damages, additional damages, and/or attorneys' fees for Defendants' violations of Ohio's common law unfair competition;

Q.     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable by right.

Dated: November 18, 2025                              Respectfully submitted,

*/s/ Jacob Busch*       
Jacob M. Busch (OH Bar 92129)
Igor Ozeruga (OH Bar 93767)
**BUSCH IP LAW**
3513 Patterson Cir.
Richfield, OH 44286
216-200-6768
jake@buschiplaw.com
igor@buschiplaw.com


**ATTORNEYS FOR PLAINTIFF**